## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| BRANDY MIZNER-KLEARMAN and SUZETTE Q. MAXEY, | : : : |
| Plaintiffs, | : : |
| vs. | : Civil Action No. : : |
| DOLL HOUSE II, INC. d/b/a Stilettos Gentlemen's Club and THEO LAMBROS, | : : : |
| Defendants. | : : |

## COMPLAINT

Plaintiffs Brandy Mizner-Klearman ("Ms. Mizner") and Suzette Q. Maxey ("Ms. Maxey") (collectively "Plaintiffs"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 7, bring this Complaint against Defendants Doll House II, Inc. d/b/a Stilettos Gentlemen's Club ("Doll House") and Theo Lambros ("Lambros") (collectively "Defendants") and show the Court as follows:

### INTRODUCTION

1.

Plaintiffs bring this action under the Fair Labor Standards Act of 1938 (as amended) (29 U.S.C. § 201 *et seq*.), ("the FLSA") to recover due but unpaid minimum wages, additional like amounts as liquidated damages, and to be reimbursed for their costs of litigation, including their reasonable attorney's fees.

2.

Plaintiffs also seek to recover money that Defendants forced them to pay to Defendants and their employees in the form of "fees" in violation of the minimum wage provisions of the FLSA and the "free and clear" provisions of 29 CFR § 531.35.

3.

A related case, *Carter et al. v. Doll House II, Inc. et al.*, Case No. 1:14-cv-1097-MHS (N.D. Ga. 2013), is pending before the United States District Court for the Northern District of Georgia. That case is currently stayed and on interlocutory appeal to the U.S. Court of Appeals for the Eleventh Circuit.

## JURISDICTION AND VENUE

4.

This Court has subject matter jurisdiction over the present action under Art. III, § 2 of the United States Constitution, FLSA § 16(b), 29 U.S.C. § 216(b), 28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

5.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Doll House is located in this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

## THE PARTIES

6.

Ms. Mizner resides in Fulton County, Georgia.

7.

Ms. Maxey resides in DeKalb County, Georgia.

8.

Doll House is a corporation organized under the laws of the State of Georgia.

9.

Doll House can be served with process through its registered agent Alan I. Begner located at 5180 Roswelll Road South Building, Suite 100, Atlanta, Georgia 30342.

10.

Doll House is subject to the personal jurisdiction of this Court.

11.

Lambros resides in Fulton County, Georgia.

12.

Lambros can be served at his residence located at 2843 Overlook Terrace, Atlanta, Georgia 30324, or wherever he can be found.

13.

Lambros is subject to the personal jurisdiction of this Court.

**FACTUAL ALLEGATIONS**

14.

Doll House owns and operates an adult entertainment establishment located at 806 Marietta Street, N.W., Atlanta, Georgia 30318 operating under the name "Stilettos" ("the Club")

15.

Doll House's primary business at the Club is to provide entertainment in the form of nude and semi-nude dancers and the sale of alcoholic beverages.

16.

Doll House employed Ms. Mizner as a dancer at the Club from February 2013 through the date of filing of this action.

17.

At all times material hereto, Doll House has been an "employer" of Ms. Mizner as defined in FLSA § 3(d), 29 U.S.C. §203(d).

18.

At all times material hereto, Ms. Mizner has been an "employee" of Doll House as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

19.

Doll House employed Ms. Maxey as a dancer at the Club from August 2013 through May 2014.

20.

At all times material hereto, Doll House has been an "employer" of Ms. Maxey as defined in FLSA § 3(d), 29 U.S.C. §203(d).

21.

At all times material hereto, Ms. Maxey has been an "employee" of Doll House as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

22.

At all times material hereto, Lambros exercised operational control over the work activities of Plaintiffs.

23.

At all times material hereto, Lambros was involved in the day-to-day operation of the Doll House-operated club "Stilettos" in which Plaintiffs worked.

24.

At all times material hereto, Doll House vested Lambros with supervisory authority over Plaintiffs.

25.

At all times material hereto, Lambros exercised supervisory authority over Plaintiffs.

26.

At all times material hereto, Lambros regularly communicated with the Club's management regarding the day-to-day operation of the Club.

27.

At all times material hereto, Lambros exercised authority over the terms of Plaintiffs' working conditions, including all applicable rules for the Club's dancers.

28.

At all times material hereto, Lambros exercised authority over the terms of Plaintiffs' compensation, including the requirement that Plaintiffs "tip out" or pay fees to various other employees of the Club.

29.

At all times material hereto, Lambros has been an "employer" of Ms. Mizner as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

30.

At all times material hereto, Lambros has been an "employer" of Ms. Maxey as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

31.

At all times material hereto, two or more employees of Doll House used or handled items that moved in interstate commerce that are necessary for performing its commercial purpose.

32.

Such products moved in interstate commerce include wine, beer, liquor and other alcoholic products; food and food service items; computers; office furniture and office supplies.

33.

Throughout 2013, Doll House had two or more employees who regularly participated in the sale and service of food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia.

34.

Throughout 2013, Doll House had two or more employees who regularly processed credit card transactions involving customers who reside outside the State of Georgia.

35.

Throughout 2013, Doll House had two or more employees who regularly processed credit card transactions involving financial institutions located outside the State of Georgia.

36.

Throughout 2013, Doll House had two or more employees who regularly used wires for the interstate transfer of funds in the furtherance of its business.

37.

Throughout 2014, Doll House had two or more employees who regularly participated in the sale and service of food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia.

38.

Throughout 2014, Doll House had two or more employees who regularly processed credit card transactions involving customers who reside outside the State of Georgia.

39.

Throughout 2014, Doll House had two or more employees who regularly processed credit card transactions involving financial institutions located outside the State of Georgia.

40.

Throughout 2014, Doll House had two or more employees who regularly used wires for the interstate transfer of funds in the furtherance of its business.

41.

During 2013, Doll House had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

42.

During 2014, Doll House had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

43.

During 2013, Doll House had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

44.

During 2014, Doll House had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

45.

During 2013, Doll House had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

46.

During 2014, Doll House had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

47.

At all times material hereto, Doll House has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

48.

At all times material hereto, Ms. Mizner was not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

49.

At all times material hereto, Doll House did not employ Ms. Mizner in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

50.

At all times material hereto, Doll House did not employ Ms. Mizner in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

51.

At all times material hereto, Ms. Maxey was not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

52.

At all times material hereto, Doll House did not employ Ms. Maxey in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

53.

At all times material hereto, Doll House did not employ Ms. Maxey in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

54.

At all times material hereto, Defendants failed to pay Ms. Mizner wages for work she performed as their employee.

55.

At all times material hereto, Defendants failed to pay Ms. Maxey wages for work she performed as their employee.

56.

At all times material hereto, Ms. Mizner's sole form of remuneration for the work she performed as Defendants' employee was the receipt of tips from Defendants' customers.

57.

At all times material hereto, Ms. Maxey's sole form of remuneration for the work she performed as Defendants' employee was the receipt of tips from Defendants' customers.

58.

Defendants required Ms. Mizner to pay a portion of the tips she received directly to Defendants in the form of fees and fines.

59.

Defendants required Ms. Maxey to pay a portion of the tips she received directly to Defendants in the form of fees and fines.

60.

During the three years prior to the filing of this action, Defendants required Plaintiffs to pay them certain fees during each shift they worked including bar fees, security fees, DJ fees, and House Mom fees.

61.

Defendants required Plaintiff to pay a portion of the tips they received directly to Defendants for reasons other than the pooling of tips among employees who customarily and regularly receive tips.

62.

At all times material hereto, Defendants required Plaintiffs to comply with policies and rules they established.

63.

Such rules concerned, *inter alia*, stage names, dancer attire, performances, music selection, attendance and scheduling, and interactions with customers, which Plaintiffs and other dancers were required to follow in order to continue their employment.

64.

At all times material hereto, Defendants prohibited Plaintiffs and other dancers from working in other adult entertainment establishments.

65.

At all times material hereto, Defendants discouraged Plaintiffs and other dancers from leaving town for any length of time with implied threats of termination.

66.

At all times material hereto, Defendants had sole control over whether Plaintiffs could entertain customers in the club's V.I.P. rooms.

67.

At all times material hereto, Defendants required Plaintiffs and other dancers to execute a sign-in sheet before the start of each shift.

68.

At all times material hereto, Defendants required Plaintiffs and other dancers to undergo and pass a "breathalyzer test" before they were permitted to leave the premises after each shift.

69.

At all times material hereto, Defendants required Plaintiffs to pay for the costs of such breathalyzer tests.

70.

At all times material hereto, Defendants threatened Plaintiffs with disciplinary actions including but not limited to verbal warnings, imposition of additional fees and fines,

suspension, and termination if they failed to follow Defendants' established policies and rules.

71.

At all times material hereto, Defendants classified Plaintiffs as independent contractors.

72.

At all times material, Plaintiffs were employees of Defendants.

73.

At all times material hereto, Defendants misclassified Plaintiffs as independent contractors.

74.

At all times material hereto, Defendants intentionally and willfully misclassified Plaintiffs as independent contractors.

75.

At all times material hereto, Defendants have failed to "post and keep posted a notice explaining the [FLSA] . . . in [a] conspicuous place[]," as required by 29 CFR § 516.4.

## COUNT I
## FAILURE TO PAY MINIMUM WAGE TO MS. MIZNER

76.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

77.

As all times material hereto, Defendants misclassified Ms. Mizner as an independent contractor.

78.

At all times material hereto, Ms. Mizner has been an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

79.

Defendants failed to inform Ms. Mizner of the provisions of FLSA § 3(m); 29 U.S.C. § 203(m).

80.

At all times material hereto, Defendants failed to compensate Ms. Mizner at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

81.

At all times material hereto, Defendants willfully failed to compensate Ms. Mizner at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

82.

Ms. Mizner is entitled to payment of minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

83.

Ms. Mizner is entitled to payment of the money Defendant require them in the form of fees and fines in violation of the "free and clear" requirement of 29 CFR 531.35.

84.

Defendants distributed a portion of the money that they received from Ms. Mizner in the form of fees and fines to employees of Defendants who do not customarily and regularly receive tips.

85.

Defendants' imposition of fees on Ms. Mizner constituted an illegal mandatory tip pool in violation of 29 U.S.C. § 203(m).

86.

As a result Defendants' requirement that Ms. Mizner pay them fees and fines, Ms. Mizner is entitled to reimbursement of all fees and fines paid to Defendants during the three years prior to the filing of this Complaint in addition to all other unpaid wages during the same period.

87.

As a result of the willful and intentional nature of Defendants' violations of the FLSA's minimum wage requirements, as alleged above, Ms. Mizner is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

88.

As a result of their underpayment of wages to Ms. Maxey in violation of the FLSA's minimum wage requirements, as alleged above, Defendants are liable to Ms. Mizner for her litigation costs, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT II
## FAILURE TO PAY MINIMUM WAGE TO MS. MAXEY

89.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

90.

As all times material hereto, Ms. Maxey was misclassified as an independent contractor.

91.

At all times material hereto, Ms. Maxey has been an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

92.

Defendants failed to inform Ms. Maxey of the provisions of FLSA § 3(m); 29 U.S.C. § 203(m).

93.

At all times material hereto, Defendants failed to compensate Ms. Maxey at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

94.

From in or about August 2013 through May 2014, Defendants willfully failed to compensate Ms. Maxey at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

95.

Ms. Maxey is entitled to payment of minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

96.

Defendants' requirement that Ms. Maxey pay them fees and fines violated the "free and clear" requirement of 29 CFR 531.35.

97.

Defendants distributed a portion of the money that they received from Ms. Maxey in the form of fees and fines to employees of Defendants who do not customarily and regularly receive tips.

98.

Defendants' imposition of fees on Ms. Maxey constituted an illegal mandatory tip pool in violation of 29 U.S.C. § 203(m).

99.

As a result Defendants' requirement that Ms. Maxey pay them fees and fines, Ms. Maxey is entitled to reimbursement of all fees and fines paid to Defendants during the three years prior to the filing of this Complaint in addition to all other unpaid wages during the same period.

100.

As a result of the willful and intentional nature of Defendants' violations of the FLSA's minimum wage requirements, Ms. Maxey is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

101.

As a result of their underpayment of wages to Ms. Maxey in violation of the FLSA's minimum wage requirements, as alleged above, Defendants are liable to Ms. Maxey for her litigation costs, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

WHEREFORE, Plaintiffs respectfully prays:

1. That Plaintiffs be awarded amounts to be determined at trial against Defendants in unpaid minimum wages, plus additional like amounts in liquidated damages and pre- and post-judgment interest thereon;

2. That Plaintiffs be awarded amounts to be determined at trial against Defendants jointly and severally for monies Defendants required Plaintiffs pay to them and other amounts illegally withheld from Plaintiffs' tips;

3. That Plaintiffs be awarded their costs of litigation, including their reasonable attorney's fees, from Defendants; and

4. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

*DELONG CALDWELL BRIDGERS &  
FITZPATRICK, LLC*

3100 Centennial Tower  
101 Marietta Street  
Atlanta, Georgia 30303  
(404) 979-3171  
(404) 979-3170 (f)  
charlesbridgers@dcbflegal.com  
kevin.fizpatrick@dcbflegal.com  
matthew.herrington@dcbflegal.com  

*/s/ Charles R. Bridgers*  
Charles R. Bridgers  
Ga. Bar No. 080791  

*/s/ Kevin D. Fitzpatrick, Jr.*  
Kevin D. Fitzpatrick, Jr.  
Ga. Bar No. 262375  

*/s/ Matthew W. Herrington*  
Matthew W. Herrington  
Ga. Bar No. 275411  

***Counsel for Plaintiffs***